## GEORGE A. HUFF

v.

## J. Y. WALLICK.

1. CONTRACT—INSTRUCTION.—Where the contract was that "said ice is to be paid for at, etc., for *merchantable* ice." *Held*, that it was error for the court in an instruction to eliminate from the contract and thereby ignore, the description of ice for which, by the terms of the contract, payment was to be made.

2. CONTRACT—CONSTRUCTION OF.—The court is of opinion that a reasonable construction of the contract did not necessarily require a separation of the unmerchantable from the merchantable ice at the time of taking it from the ice house, but if it could be made by selling and receiving payment for the good ice only when delivered to customers, and, allowing the snow ice to remain upon the good ice, worked no injury to appellee, there is no reasonable objection to such a method of separation.

APPEAL from the County Court of Champaign county; the Hon. J. W. LANGLEY, Judge, presiding. Opinion filed August 20, 1885.

Messrs. GERE & BEARDSLEY, for appellant; cited Shields v. Reibe, 9 Bradwell, 598; Babcock v. Trice, 18 Ill. 420; Sigsworth v. McIntyre, 18 Ill. 126; Sandford v. Rawlings, 43 Ill. 92.

Mr. FRANCIS M. WRIGHT, for appellee.

CONGER, J. This was an action of assumpsit brought by appellee in the County Court of Champaign county against appellant, upon the following contract: "Article of agreement made and entered into this 30th day of April, A. D. 1884, between J. Y. Wallick of the first part, and George A. Huff of the second part, both of the County of Champaign, and State of Illinois, witnesseth: That it is hereby agreed that said party of the first part sells to the said party of the second part, a certain lot of ice, now in his possession, in the city of Urbana, in said county and State, not to exceed 450 tons. That said Huff is to take 150 tons by July first next, and 100

tons in each of the months of July, August and September. The said ice is to be paid for at the rate of $1.50 per ton for *merchantable ice*, and to be weighed on the scales most convenient, each party to pay for one half the expenses of weighing the same.   *   *   *

" It is hereby further agreed by the said Huff, that he will take said ice from the ice house in reasonable order, taking into consideration the condition that the ice is in when taken therefrom."   *   *   *

Huff proceeded under the foregoing contract to take the ice from the ice house, and retail it to his customers during the summer of 1884.

It appears from the evidence that a portion of the ice in the ice house was not clear, solid ice, but had some three inches upon some of the cakes made up of what is known as white or snow ice, made of snow which had fallen upon the water and frozen, and was not therefore merchantable ice.

Huff and his employes, in taking the ice from the ice house daily as needed to supply customers, instead of cutting off this snow ice at the ice house, loaded it into wagons and weighed it all together, but in dealing it out to customers, charged them for such portion only as was sound, clear ice, not weighing or accounting for the snow ice, upon the theory that it was of no value.   Upon the trial below, appellee insisted that after the ice had been taken from the ice house, weighed, and delivered to customers by appellant, there was such an acceptance under the contract as would preclude him from showing that any portion of such ice was not in fact merchantable.

Upon this point appellant asked the court to give to the jury the following instruction:

" The court instructs the jury that if, in this case, you believe from the evidence that the defendant, Huff, has paid the plaintiff for the ice purchased from him at the rate of $1.50 per ton for the *merchantable* ice he was able, using due care, to remove from plaintiff's ice house, and has also paid at the same rate for the waste in said ice because he did not take the ice out at the time and in the quantities specified in the con-

tract in evidence, then in that case you will find for the defendant." Which the court refused to give, but amended the same by striking out the word "*merchantable*," and then gave it as amended.

This instruction, as presented to the court, was proper, and should have been given, The contract is clear and explicit, that "said ice (is) to be paid for at the rate of $1.50 per ton for *merchantable* ice, and it was error for the court to eliminate from the contract, and thereby ignore, the description of ice for which, by the terms of the contract, payment was to be made.

It is true, if Huff had inspected and received all the ice taken, under such circumstances as made it his duty to leave in the ice house, or upon the premises, such portion as did not come within the terms of the contract, he would be estopped from afterward claiming that any portion of the ice so taken was not merchantable; but the contract clearly implies that some portion of the ice was not merchantable, and that at some time Huff would have the right to determine what portion he would receive under the contract as merchantable.     The question is, When was it Huff's duty to make this selection? Had he removed from each block or cake of ice the imperfect, unmerchantable portion, and left it upon the ground to melt, we suppose no one would insist upon his liability to pay for such waste; but because instead of doing this useless work, troublesome and expensive to himself, and utterly valueless to Wallick, he allowed the snow ice to remain upon the cakes, selling them in that condition, but receiving payment for the good ice only, it is insisted that he has thereby accepted the snow ice as merchantable.

We think a reasonable construction of the contract did not necessarily require a separation of the unmerchantable from the merchantable ice at the time of taking it from the ice house, but if it could be made by selling and receiving payment for the good ice only when delivered to customers, and that allowing the snow ice to remain upon the good ice worked no wrong or injury to Walleck, there could be no reasonable objection to such a method of separation.

It follows from the foregoing reasons that this modification of appellant's second instruction and the giving of appellee's first instruction was also erroneous. It is also urged that the evidence did not warrant the jury in finding so large a verdict, but as this case must be tried again we express no opinion upon that question.

The judgment will be reversed and the cause remanded.

Reversed and remanded.